**UNITED STATES DISTRICT COURT, SOUTHERN DISTRICT OF NEW YORK.**

QUINTIN J BALLENTINE

    Plaintiff,

    v.

BRONX CARE MEDICAL SYSTEM

NEW YORK CITY DEPARTMENT OF

HEALTH AND MENTAL HYGIENE

("NYCDOHMH")

NEW YORK STATE OFFICE OF MENTAL

HEALTH ("OMH")

UNITED STATES OF AMERICA

JOHN AND JANE DOE PROVIDERS

    Defendant(s).

Case No

**COMPLAINT FOR:**

**(1) VIOLATION OF NEW YORK**

    **STATE HUMAN RIGHTS LAW**

**(2) MEDICAL MALPRACTICE**

**(3) LACK OF INFORMED CONSENT**

**(4) DEFAMATION**

**(5) VIOLATION OF CIVIL RIGHTS**

    **UNDER 42 U.S.C. § 1983**

**JURY TRIAL DEMANDED**

**NATURE OF THE ACTION**

This civil rights and medical malpractice action exposes a systemic failure at BronxCare, where the pursuit of Medicaid funding and research data superseded MR's constitutional rights and bodily autonomy. BALLENTINE. For over a decade, and specifically within the last two years, Defendants have weaponized MR. BALLENTINE's political and religious beliefs to pathologize him, justifying a regime of forced, non-consensual psychiatric drugging without valid informed consent or capacity determinations. Rather than treating legitimate medical needs, Defendants created a fiction of severe instability through falsified records, subjecting MR. BALLENTINE to dangerous psychotropic injections and ridicule, all while ignoring his pleas for less restrictive care. This case seeks to dismantle the paternalistic machinery that converted a vulnerable patient into a revenue stream and research subject.

**PARTIES**

1. Plaintiff MR. BALLENTINE ("MR. BALLENTINE") is a natural person and a citizen of the State of New York, residing in NEW YORK CITY, New York. MR. BALLENTINE is a consumer of mental health services.

2. Defendant BRONX CARE MEDICAL CENTER ("BronxCare") is a corporation organized and existing under the laws of the State of New York, with its principal place of business located at [Address], Bronx, New York. BronxCare operates a teaching hospital and outpatient clinic.

3. Defendant NEW YORK CITY DEPARTMENT OF HEALTH AND MENTAL HYGIENE ("NYCDOHMH") is a municipal agency of the City of New York.

2

NYCDOHMH is the agency responsible for overseeing and undersigning mental health treatments provided within the jurisdiction.

4.  Defendant NEW YORK STATE OFFICE OF MENTAL HEALTH ("OMH") is an agency of the State of New York. OMH is the state regulatory body responsible for overseeing treatment protocols.

5.  Defendant THE UNITED STATES OF AMERICA ("The United States") is a sovereign nation. The United States funds the Medicaid public health insurance program.

6.  Defendants JOHN AND JANE DOE PROVIDERS (1-10) ("Individual Providers") are natural persons whose true identities are currently unknown to Plaintiff. Upon information and belief, the Individual Providers are psychiatrists, residents, and nurses who are citizens of the State of New York and were employed by or agents of BronxCare at all times relevant to this action.

## JURISDICTION AND VENUE

7.  This Court has general original subject matter jurisdiction over this action pursuant to N.Y. Const. art. VI, § 7, as it is competent to adjudicate MR. BALLENTINE's claims for damages and equitable relief arising from medical malpractice, lack of informed consent, defamation, and violations of the New York State Human Rights Law.

8.  This Court further possesses concurrent subject matter jurisdiction to hear claims arising under 42 U.S.C. § 1983 regarding the deprivation of MR. BALLENTINE's civil rights under color of state law, as the Supreme Court of the State of New York is a court of general jurisdiction authorized to entertain such federal causes of action alongside state law claims.

9. This Court has personal jurisdiction over BronxCare pursuant to CPLR § 301, as the defendant is a domestic corporation authorized to conduct medical business within the State of New York and maintains its principal place of business in the Bronx, rendering it essentially at home in this jurisdiction.

10. This Court has personal jurisdiction over NYCDOHMH and OMH, as they are government agencies and departments of the City and State of New York, respectively, that formulate policy and oversee mental health services within the state, including the facilities where the alleged systematic coercion occurred.

11. This Court exercises personal jurisdiction over Individual Providers pursuant to CPLR § 302(a)(2), because these defendants committed tortious acts within the state, specifically the weaponization of MR. BALLENTINE's beliefs to justify forced psychiatric drugging and the falsification of medical records at BronxCare facilities in New York.

12. Venue is proper in this county pursuant to CPLR § 503(a) and (c) because BronxCare maintains its principal office in Bronx County, and the acts complained of, including the non-consensual medical interventions, occurred within this county.

13. Venue is also properly designated in this county pursuant to CPLR § 504(3) regarding the claims against NYCDOHMH, as the cause of action arose within the City of New York, specifically at the medical facilities located in the Bronx, where the falsified records were generated.

## FACTUAL BACKGROUND

**A System of Profit Over Patient Care: The Institutional Framework at BronxCare**

14. From 2016 through 2026, MR. BALLENTINE remained a patient at BronxCare, a teaching hospital that conducts medical research. Throughout this decade-long period, BronxCare and Individual Providers prioritized financial incentives and data collection over MR. BALLENTINE's actual welfare, allowing profit motives to dictate treatment decisions and charting practices.

15. Defendants conducted these research activities without the knowledge or informed consent of the majority of their patients, including MR. BALLENTINE. The hospital utilized the patient population as subjects for data aggregation rather than as individuals requiring personalized care.

16. This system operated under the direct oversight of the NYCDOHMH and the OMH, agencies that failed to prevent the exploitation of patients within the facility. Furthermore, the federal government funded this profit-driven treatment regimen through the Medicaid public health insurance program, effectively subsidizing the violation of MR. BALLENTINE's rights.

**Pathologizing Dissent: The Weaponization of MR. BALLENTINE's Religious and Political Beliefs**

17. Individual Providers engaged in a concerted effort to weaponize MR. BALLENTINE's non-mainstream political and religious views are against him. Rather than engaging in objective medical analysis, Defendants treated MR. BALLENTINE's protected speech is symptomatic of mental illness.

18. Defendants consistently misconstrued MR. BALLENTINE's statements regarding his beliefs, taking them out of context to support a misdiagnosis of severe mental instability. Individual Providers failed to account for MR. BALLENTINE's culture and background, relying instead on subjective, biased, and discriminatory behavioral observations to justify their clinical conclusions.

19. When MR. BALLENTINE voiced objections to this characterization or requested changes in his treatment. Individual Providers responded with ambivalence, laughter, and open ridicule. Defendants dismissed his legitimate grievances, asserting that MR. BALLENTINE 'did not know how sick he was,' and used his deeply held beliefs as the sole justification for excessive and unnecessary treatment.

**Coercion Disguised as Care: The Administration of Psychotropic Drugs Without Informed Consent**

20. Over the past two years, Individual Providers administered numerous mind-altering drugs to MR. BALLENTINE, including long-acting intramuscular injections, during monthly and biweekly outpatient visits. Defendants carried out these invasive procedures without any legal basis; there were no signed consent forms, no valid capacity determinations, no assisted outpatient treatment orders, and no involuntary commitment paperwork.

21. Individual Providers coerced MR. BALLENTINE into compliance by threatening him with 'grave psychiatric harm,' decompensation, and forced inpatient commitment if he refused the injections. Defendants utilized fear and intimidation to bypass the legal requirement for voluntary consent.

22. Defendants failed to disclose material information regarding the risks, benefits, or less restrictive alternatives to this heavy medication regimen. Although MR. BALLENTINE

explicitly objected to these treatments. Defendants forced him to comply under duress, violating his right to bodily integrity.

**Medical Fiction: The Fabrication of Records and Failure to Diagnose Underlying Conditions**

23. Individual Providers failed to conduct a complete evaluation of MR. BALLENTINE's full health picture, negligently ignoring potential underlying medical conditions that required attention. Instead, Defendants attributed physical symptoms to psychiatric causes, failing to recognize that the psychiatric symptoms were attributed to MR. BALLENTINE were, in reality, adverse reactions to the prescribed medication regimens.

24. Defendants populated MR. BALLENTINE's medical records with fabricated anecdotes and notes describing behaviors and statements he never made. Individual Providers used these inaccurate notes to falsely frame MR. BALLENTINE is unstable, thereby creating a paper trail that justified continuing the profitable medication regimen.

25. Existing labs, discharge summaries, and adverse drug reaction notes substantiate MR. BALLENTINE's claims of misdiagnosis. These objective records contradict the subjective, falsified narratives Defendants constructed to maintain control over MR. BALLENTINE's care.

**The Human Cost: Permanent Harm to MR. BALLENTINE's Health, Reputation, and Livelihood**

26. MR. BALLENTINE has sustained tangible damages to his physical health as a direct result of Defendants' actions, as evidenced by recent medical records. The non-consensual administration of dangerous psychotropic drugs has caused significant pain, suffering, and trauma.

27. The false psychiatric diagnoses and fabricated chart notes created by Defendants have resulted in defamation of MR. BALLENTINE's character and the loss of job opportunities—furthermore, MR. BALLENTINE now experiences disparate treatment when calling emergency services for medical conditions, as responders react to the psychiatric flags on his record rather than his immediate medical needs.

28. Ultimately, the alleged misconduct by BronxCare and Individual Providers resulted in a loss of privileges and rights that should have been afforded to MR. BALLENTINE, irrespective of any disability. Defendants' actions stripped him of his autonomy and subjected him to a system that prioritized institutional goals over human dignity.

## FIRST CAUSE OF ACTION
## VIOLATION OF NEW YORK STATE HUMAN RIGHTS LAW

29. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

30. At all relevant times, MR. BALLENTINE was a member of protected classes under N.Y. Exec. Law § 296 based on his creed, specifically his held religious and political beliefs, and his disability, specifically the psychiatric diagnoses perceived and attributed to him by Defendants.

31. BronxCare and its outpatient clinics constitute a place of public accommodation within the meaning of N.Y. Exec. Law § 296(2)(a). Furthermore, NYCDOHMH, by overseeing and administering mental health services through these facilities, functions as a provider of public services subject to the statute's non-discrimination mandates.

32. Defendants subjected MR. BALLENTINE to inferior terms, conditions, and privileges of healthcare services compared to the general public. Specifically, Individual Providers and

BronxCare denied MR. BALLENTINE, the right to informed consent, falsified his medical charts to justify restrictive treatment, and enforced a regimen of long-acting intramuscular injections under threat of inpatient commitment, thereby denying him the full and equal enjoyment of medical services.

33. The adverse treatment described herein was inflicted because of MR. BALLENTINE's creed and perceived disability. Individual Providers weaponized MR. BALLENTINE's religious and political expressions by characterizing them as pathological delusions rather than protected speech, using these stereotypes to justify the escalation of forced drugging and the denial of less restrictive alternatives.

34. NYCDOHMH is liable for the discriminatory acts of BronxCare and Individual Providers because it encouraged, condoned, or approved the systematic violation of patient rights through calculated inaction, failure to enforce informed consent protocols, and the maintenance of oversight policies that incentivized the retention of patients on restrictive regimens regardless of medical necessity.

35. As a direct and proximate result of Defendants' violation of the New York State Human Rights Law, MR. BALLENTINE has suffered and continues to suffer significant damages, including severe emotional distress, humiliation, loss of civil rights, loss of bodily autonomy, and the stigma associated with falsified medical records.

## SECOND CAUSE OF ACTION
## MEDICAL MALPRACTICE

36. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

9

37. At all relevant times, BronxCare and Individual Providers owed MR. BALLENTINE has a duty to exercise that degree of care, skill, and diligence expected of reasonably prudent psychiatric and medical providers in the State of New York, specifically regarding the diagnosis, medication management, and outpatient treatment of patients presenting with complex histories.

38. BronxCare and Individual Providers deviated from accepted standards of medical practice by failing to conduct a complete and thorough evaluation of MR. BALLENTINE's full medical history. Instead of ruling out underlying medical conditions or medication-induced toxicity, Defendants weaponized MR. BALLENTINE's political and religious beliefs to justify forced psychiatric labeling, relying on falsified chart narratives rather than objective clinical observation.

39. BronxCare and Individual Providers further departed from the standard of care by prescribing a dangerous regimen of psychotropic medications, including a long-acting Intramuscular (IM) injection, without a valid clinical indication, risk-benefit analysis, or monitoring plan. This practice constituted negligent polypharmacy driven by financial gain rather than medical necessity.

40. Defendants failed to obtain informed consent for the administration of psychotropic drugs and the long-acting IM injection. Defendants failed to disclose reasonably foreseeable risks, benefits, and alternatives that a reasonable medical practitioner would have disclosed. Furthermore, Defendants vitiated any voluntariness by coercing MR. BALLENTINE, with threats of decompensation and rehospitalization if he refused, without ever obtaining signed consent forms or making a lawful capacity determination.

41. A reasonably prudent person in MR. BALLENTINE's position would not have undergone the treatment or administration of the long-acting IM injection had they been fully informed of the risks and the lack of medical necessity. The Defendants' departures from the standard of care and failure to obtain informed consent were substantial factors in causing MR. BALLENTINE's injuries.

42. As a direct and proximate result of the negligence and malpractice of BronxCare and Individual Providers, MR. BALLENTINE suffered severe physical and emotional injury, including adverse medication reactions, physical pain, mental anguish, stigmatization through false diagnoses, and loss of enjoyment of life, requiring further medical intervention to correct the harm caused.

### THIRD CAUSE OF ACTION
### LACK OF INFORMED CONSENT

43. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

44. At all relevant times, BronxCare and the Individual Providers owed MR. BALLENTINE has a duty under N.Y. Pub. Health Law § 2805-d to disclose the reasonably foreseeable risks, benefits, and alternatives to the treatment proposed, specifically the administration of numerous psychotropic medications and a long-acting intramuscular (IM) injection, to permit MR. BALLENTINE to make a knowledgeable evaluation.

45. Defendants breached this duty by failing to provide MR. BALLENTINE with any meaningful information regarding the material risks of the prescribed polypharmacy regimen, including metabolic and neurological side effects, or the specific risks associated with the long-acting IM injection. Defendants further failed to disclose or discuss feasible, less restrictive alternatives, such as dose adjustments, non-

pharmacologic therapy, or increased monitoring, despite the non-emergent nature of the outpatient visits.

46. Defendants failed to obtain voluntary consent, instead employing coercive tactics wherein Individual Providers told MR. BALLENTINE, he must take the drugs no matter the side effects.' This coercion, combined with the ridicule of his objections and the absence of any signed consent forms or documented discussions in the medical record, rendered any purported acquiescence invalid and involuntary.

47. The administration of these medications occurred during routine, recurring outpatient encounters over two years, not during a medical emergency. At no time did Defendants obtain a judicial determination of incapacity, an order for Assisted Outpatient Treatment (AOT), or a court order authorizing treatment over objection pursuant to Rivers v. Katz, nor did MR. BALLENTINE lack the capacity to make treatment decisions.

48. A reasonably prudent person in MR. BALLENTINE's position, if fully informed of the severe risks associated with the long-acting IM injection and polypharmacy, and the availability of less restrictive alternatives, would have refused the proposed treatment. MR. BALLENTINE's contemporaneous and repeated objections to the medication regimen further corroborate that he would have declined the treatment had he been afforded a non-coercive, informed choice.

49. As a direct and proximate result of Defendants' failure to obtain informed consent, the unauthorized medications were administered, causing MR. BALLENTINE to suffer medication-related injuries, adverse physiological reactions, and psychological harm as substantiated by recent labs and medical records.

50. By reason of the foregoing, MR. BALLENTINE was subjected to unauthorized medical battery disguised as treatment, resulting in severe physical and emotional distress, loss of bodily autonomy, and physical injuries requiring further medical intervention, for which he seeks compensatory and punitive damages.

**FOURTH CAUSE OF ACTION**
**DEFAMATION**

51. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

52. Defendants, specifically Individual Providers acting within the scope of their employment at BronxCare and under the oversight of NYCDOHMH and OMH, created and recorded materially false statements of fact in MR. BALLENTINE's permanent medical records. These entries did not constitute protected professional opinion but rather fabricated specific events, attributing to MR. BALLENTINE quotes him as never speaking and 'violent' or 'grossly disorganized' behaviors that never occurred, thereby portraying him as dangerously unstable.

53. Defendants published these false statements to third parties lacking a privileged interest in the communications. Specifically, BronxCare and Individual Providers disseminated the falsified 'dangerousness' narratives and psychiatric labels to external emergency services personnel, third-party insurers (including Medicaid administrators), and non-treating providers via Health Information Exchanges (HIE) and electronic health record interoperability networks.

54. Defendants acted with actual malice and a reckless disregard for the truth, thereby defeating any qualified 'common interest' privilege. Individual Providers and BronxCare fabricated these records to justify non-consensual psychiatric drugging for financial gain

13

and to punish MR. BALLENTINE for his political and religious beliefs. Defendants persisted in publishing these falsehoods despite MR. BALLENTINE's contemporaneous objections and the existence of objective evidence contradict the chart notes.

55. Defendants abused any applicable privilege by disseminating the defamatory statements beyond the scope of necessary medical treatment. The false records were shared with administrative entities, law enforcement, and emergency responders in contexts unrelated to active psychiatric care, solely to stigmatize MR. BALLENTINE and ensure his continued subjection to coercive state control.

56. As a direct and proximate result of these publications, MR. BALLENTINE suffered special damages, including the loss of specific employment opportunities due to the stigma of the falsified record, and concrete economic damages arising from altered and discriminatory medical treatment by subsequent providers who relied on the defamatory history to deny standard care.

57. By reason of the foregoing, MR. BALLENTINE has suffered severe reputational injury, economic loss, and emotional distress, entitling him to compensatory and punitive damages in an amount to be determined at trial.

### FIFTH CAUSE OF ACTION
### VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983

58. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

59. At all relevant times, Defendants BronxCare and Individual Providers acted under color of state law. Although private entities, their conduct is fairly attributable to the State because they operated within a heavily regulated mental health ecosystem, funded by

Medicaid, and subject to the direct oversight, undersigning, and coercive statutory framework enforced by Defendants NYCDOHMH and OMH. The administration of involuntary or coerced psychotropic medication constitutes a public function delegated by the State to these providers.

60. Defendants deprived MR. BALLENTINE of his liberty interest in bodily integrity and the right to refuse medical treatment without due process of law. Specifically, Individual Providers and BronxCare administered numerous psychotropic medications, including a long-acting intramuscular (IM) injection, during recurring outpatient visits without obtaining signed informed consent, without determining incapacity, and without securing a court order for treatment-over-objection or assisted outpatient treatment (AOT).

61. Defendants violated the Equal Protection Clause by intentionally subjecting MR. BALLENTINE to disparate treatment based on his protected class status (religion) and his political viewpoints. Individual Providers weaponized MR. BALLENTINE's non-mainstream political and religious expressions to justify exaggerated psychiatric diagnoses, falsified chart notes, and a more restrictive medication regimen than that applied to similarly situated patients, effectively punishing him for his First Amendment-protected speech.

62. Defendant NYCDOHMH is liable under Monell because the constitutional deprivations suffered by MR. A municipal policy, custom, or practice of deliberate indifference caused BALLENTINE. NYCDOHMH failed to train, supervise, or audit BronxCare regarding the mandatory constitutional safeguards for outpatient psychotropic administration. This systemic failure created an environment in which providers routinely

bypassed consent procedures and falsified records to maximize throughput and billing, thereby violating MR. BALLENTINE's rights are a foreseeable consequence.

63.  As a direct and proximate result of Defendants' acts and omissions, MR. BALLENTINE suffered severe physical and emotional distress, including the adverse effects of unwanted psychotropic drugging, stigmatization through falsified medical records, loss of bodily autonomy, and violation of his constitutional rights.

64.  By reason of the foregoing, MR. BALLENTINE has been damaged in an amount to be determined at trial, including compensatory damages for physical and emotional injury, and punitive damages against the Individual Providers for their malicious and intentional violation of clearly established constitutional rights.

## PRAYER FOR RELIEF

WHEREFORE, MR. BALLENTINE respectfully requests that this Court enter judgment in his favor and against BronxCare, NYCDOHMH, OMH, The United States, and Individual Providers as follows:

## ON ALL CAUSES OF ACTION:

1.  Awarding MR. BALLENTINE compensatory damages in an amount to be determined at trial to compensate for all injuries, economic losses, and pain and suffering sustained.

2.  Awarding MR. BALLENTINE the costs of this action, including reasonable attorney's fees and expenses, to the fullest extent permitted by law.

3.  Granting such other and further relief as the Court deems just and proper.

16

## **JURY TRIAL**

Plaintiff demands a trial by jury for all issues so triable.

Dated: 03/15/2026

Respectfully submitted,

By:

QUINTIN J BALLENTINE

PRO SE PLAINTIFF

245 WEST 131ST #12

NEW YORK, ,NY, 10027

ballentineqj@yahoo.com

571-249-5653

17